**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00089-CV**

_____

**PLAZA CITY, LLC, Appellant**

**V.**

**STEPHANIE L. STURMAN A/K/A STEPHANIE L. MEDRANO
D/B/A E.S. DESIGNS, Appellee**

_____

**On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 18-07-09861-CV**

_____

**MEMORANDUM OPINION**

Appellant Plaza City, LLC ("Plaza") sued AES Septic, LLC ("AES") and

Stephanie L. Sturman a/k/a Stephanie L. Medrano d/b/a E.S. Designs ("Sturman")

for multiple causes of action after one of Plaza's tenants ("Tenant")[1] backed out of

a long-term commercial lease, which Plaza alleges AES and Sturman's conduct

_____

[1]"Tenant" is Crawford Strategies, LLC and Jennifer Crawford, who are not
parties to this appeal.

1

caused.[2] Plaza appeals from the trial court's ruling granting Sturman's motion for summary judgment. Sturman is a licensed sanitarian,[3] who argued in her motion for summary judgment that her official stamp was placed on design drawings for the septic tank system of an office building without her knowledge or consent. Plaza contends the trial court erred in granting Sturman's Traditional Motion for Summary Judgment. Plaza argues that: (1) the deemed admissions Sturman relied upon were merit-preclusive and should have been withdrawn; (2) Sturman's motion should have been denied because fact issues existed; and (3) knowledge is not required for a negligence cause of action, and Plaza's conversations with AES's employee created a fact issue regarding Plaza's conspiracy cause of action. For the following reasons, we will affirm the trial court's judgment.

---

[2]Prior to granting Sturman's Motion for Summary Judgment, the trial court granted AES's Traditional Motion for Summary Judgment and severed AES's claims from this lawsuit, and Plaza filed a separate appeal as to those claims, which we addressed in a separate memorandum opinion.

[3]"Sanitarian" is defined as "a specialist in sanitary science and public health[.]" https://merriam-webster.com/dictionary/sanitarian (last accessed 11/16/2022).

## I. Background

### A. Parties' Relationship and History

Plaza owns an office building in Montgomery County and entered into an agreement with Tenant for the buildout of a certain space that required redesign of the septic system. The lease commenced on May 1, 2018, and Plaza had ninety days to complete the buildout, or Tenant had the right to terminate the lease. The lease agreement contained a provision that time was of the essence and required "strict compliance with the times for performance." The agreement provided that Plaza would lease Tenant 10,900 square feet of space. In April 2018, Plaza hired AES to upgrade the septic system and prepare drawings to submit to the Montgomery County Permit Department ("MCPD"), which required a licensed sanitarian's approval and signature. Sturman was one of the licensed sanitarians AES used for its projects.

Emails showed that in June 2018, AES submitted redesign drawings to the MCPD, and due to irregularities, MCPD questioned Sturman about the signature date. Sturman responded to the MCPD that she had not signed the drawings and would instruct Luis Cerda, an AES employee, that what happened was "unacceptable and it needed to stop right now." In June 2018, Plaza and Tenant met with the MCPD, who advised the sanitarian's signature on AES's septic drawings had been forged, and MCPD denied the permit.

3

On June 18, 2018, Tenant sent a letter to Plaza indicating they were terminating their agreement. The letter from Tenant to Plaza advised, "Due to the recent fraudulent activities surrounding the septic permit involving our potential business, PlayCation Zone, we must remove ourselves from this situation, in particular, by terminating the lease at 32507 Tamina Road." Tenant also demanded return of their payments.

## B. Procedural Posture

Plaza alleged that AES advertised their company as a "septic system designing, permitting and installation company." Plaza hired AES to design the expansion of the septic system, and prior to the installation, AES was required to obtain a permit from the MCPD. Plaza alleged that AES submitted documents to the MCPD with a forged sanitarian's signature, specifically Sturman, and when she advised the MCPD that AES forged her signature, the MPCD denied the permit application and the expansion project was halted. Plaza further alleged that due to the halt of the project, Tenant terminated the long-term lease agreement and demanded a refund of all payments made toward the lease agreement.

After Tenant terminated the lease, Plaza ultimately sued AES for breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, and "civil conspiracy/joint and several liability." Plaza amended its Petition and added Sturman as a defendant. Plaza alleged that Sturman allowed AES to use her seal

4

when she was unavailable. Plaza asserted causes of action for negligence and "civil conspiracy/joint and several liability" against Sturman. Plaza sought actual damages, exemplary damages, and attorney's fees.

## C. Motion for Summary Judgment, Response, and Evidence

In February 2021, Sturman filed her Traditional Motion for Summary Judgment. Sturman argued that AES admitted in its deposition that it "unilaterally and without Defendant, Sturman's knowledge submitted documentation bearing Sturman's sanitation seal signature." Sturman contended she was entitled to summary judgment on Plaza's negligence and conspiracy/joint and several liability claims, because she did not cause Plaza's damages, and Plaza suffered no damages. In addition to the deposition testimony, Sturman based her motion in part on the deemed admissions since Plaza failed to answer AES's Requests for Admissions. Sturman did not argue that the deemed admissions were the result of flagrant bad faith or conscious disregard of the rules on Plaza's part. In support of her Traditional Motion for Summary Judgment, Sturman included the following evidence: 1) Deposition Transcript of AES's corporate representative; 2) AES's Requests for Admissions to Plaintiff; and 3) Order Granting AES's Traditional Motion for Summary Judgment.

Plaza responded to Sturman's Traditional Motion for Summary Judgment contending that the deemed admissions are merit-preclusive and should be set aside

since Sturman was required to show that Plaza acted in "flagrant bad faith or callous disregard," and she failed to do so. The Response noted Plaza's counsel was undergoing a law firm merger and its failure to answer the Requests for Admissions was the result of an "unfortunate oversight." Plaza further argued that fact issues remained pertaining to Sturman's role in causing Tenant to terminate its lease and what damages resulted from Sturman's negligence. Finally, it argues that conversations between Plaza and AES create a fact issue regarding Sturman's knowledge regarding AES's use of her seal. In support of its Response, Plaza included the following evidence: 1) Attorney Correspondence; 2) Responses to Requests for Admission; 3) Architectural Plans for subject property; 4) Lease Termination Letter; 5) Plaza's Responses to Requests for Disclosure; and 6) Business Records Provided by Antonio Plaza with conversation between Plaintiff and AES.

The record does not show that Plaza included any evidence regarding the oversight in answering the Requests for Admissions in its Response, and Plaza never filed a separate motion to strike or a motion to withdraw the deemed admissions. Instead, in March 2021, after Sturman filed her Motion for Summary Judgment, Plaza filed Answers to AES's Requests for Admissions and attached them as evidence to its Response to Sturman's Traditional Motion for Summary Judgment. Sturman moved to strike Plaza's Answers to AES's Requests for Admissions and

argued that Plaza only responded after she filed her Traditional Motion for Summary Judgment, waiting almost a year and a half after AES served the Requests for Admissions. The record does not show that the trial court ever ruled on the Motion to Strike. The trial court granted Sturman's Traditional Motion for Summary Judgment without specifying the basis.

## II. Analysis

In its sole issue, Plaza challenges the summary judgment in favor of Sturman arguing that: 1) the deemed admissions in this case were merit-preclusive and should have been withdrawn; 2) the motion should have been denied, because "significant fact issues" existed; and 3) knowledge is not required for a negligence claim, and Plaza's conversations with AES's employee created a fact issue on the conspiracy cause of action.

We review a trial court's ruling on a motion for summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018); *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). In doing so, we review the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant and indulging every reasonable inference in its favor. *See Lujan*, 555 S.W.3d at 84. With a traditional motion for summary judgment, the movant has the burden to show no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See id.*; *see also* Tex. R. Civ. P. 166a(b), (c). "An issue is

7

conclusively established 'if reasonable minds could not differ about the conclusion to be drawn from the facts in the record.'" *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017) (quoting *Childs v. Haussecker*, 974 S.W.3d 31, 44 (Tex. 1998)). If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. When the trial court fails to specify the grounds on which it granted summary judgment, we must affirm if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000) (citation omitted).

Plaza asserted negligence and civil conspiracy claims against Sturman. The elements of a negligence cause of action are (1) a legal duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *See Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). The elements of a civil conspiracy claim are (1) a combination of two or more people; (2) to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) the plaintiff suffered injury as a proximate result of the wrongful act. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998); *Walker v. Hartman*, 516 S.W.3d 71, 81 (Tex. App.—Beaumont 2017, pet. denied). Both causes of action have proximate cause and damages as elements. *See*

8

*Elephant Ins. Co.*, 644 S.W.3d at 144 (negligence elements); *Walker*, 516 S.W.3d at 81 (civil conspiracy elements).

In her Traditional Motion for Summary Judgment, Sturman argued she was entitled to summary judgment because she did not cause Plaza's damages and Plaza suffered no damages. "A traditional summary judgment motion is properly granted where a defendant conclusively negates at least one essential element of a cause of action." *Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014) (citation omitted). If Sturman conclusively negates either causation or damages, as she argued in her Traditional Motion for Summary Judgment, she is entitled to judgment as a matter of law. *See id.*

In support of her argument that she did not cause Plaza's damages, Sturman included deposition testimony of AES's corporate representative and business manager, Cole Daniels. Daniels testified they worked with Sturman since 2013 and submitted between 200 and 250 designs to her. Daniels testified that AES employee, Cerda, used Sturman's stamp and signature without Sturman's knowledge in this instance and admitted that in a phone call with Plaza. Daniels explained that they subsequently terminated Cerda, and this was a "big reason" for terminating him.

In response to this evidence, Plaza contends a recorded transcript of a conversation between it and Cerda created a fact issue regarding whether Sturman knew AES used her stamp and signature. Plaza included a transcript of this recorded

9

conversation in its Response to Sturman's Traditional Motion for Summary Judgment.[4] In this transcript, despite Cerda claiming that in the past Sturman had authorized them to place her stamp and signature, Cerda admitted Sturman did not authorize him to use her stamp in this case and he agreed that he put it there without her knowledge. This transcript also reveals that Cerda admitted he did not advise Sturman after the fact that he had used her stamp. Cerda then transferred the call to his AES supervisor, who spoke with Plaza.

Further, Daniels testified that despite Cerda's claims that he sent the plans twenty days before in an earlier phone call with Plaza, Cerda did not send updated redesigned plans to Sturman to review prior to May 10, 2018. Daniels explained they checked the company emails to confirm, and Cerda failed to email them to Sturman when he said he had. Daniels explained that the only time Sturman had ever allowed them to use her stamp and signature was if she had previously reviewed and approved the plans, and this did not occur regularly. Daniels testified he was never under the impression, even with minor changes, that he could use her stamp before she approved the plans. Daniels discussed two other occasions where AES had used Sturman's stamp with her knowledge and approval after she reviewed the plans and could not think of any other projects where that had happened.

---

[4]This same transcript was included as an exhibit to Daniels's deposition with Sturman's summary judgment evidence and is discussed at length in Daniels's deposition testimony.

He also explained that when his brother, Nick, spoke to Plaza on the phone and said that Cerda had emailed the documents to Sturman, Nick was relying on what Cerda told him, which they later learned was incorrect and it had been based on a lie Cerda told. Daniels testified that when Nick told Plaza that he understood why Cerda did it, he was referring to the fact that Cerda knew he would have been in trouble if he had come to them, because the plans should have been sent before and already been sealed.

Causation is a requisite element of negligence and civil conspiracy. *See Elephant Ins. Co.*, 644 S.W.3d at 144; *Walker*, 516 S.W.3d at 81. The summary judgment evidence establishes that Sturman had no knowledge and did not participate in AES using her stamp on Plaza's redesigned septic plans that were submitted to the MCPD. The evidence also established that Sturman had only previously allowed AES to use her stamp and signature if she had already reviewed and approved the plans, which did not occur here. The summary judgment evidence conclusively negates that Sturman proximately caused Plaza's damages, a requisite element of both a negligence and civil conspiracy claim. *See Elephant Ins. Co.*, 644 S.W.3d at 144; *Walker*, 516 S.W.3d at 81. Having conclusively negated one element, the burden shifted to Plaza to present some evidence that showed the existence of a genuine issue of material fact. *See Lujan*, 555 S.W.3d at 84 (noting shifting burden). Sturman negated at least one essential element of each cause of action, and Plaza

11

failed to meet its burden to show the existence of an issue of material fact, and therefore, the trial court properly granted her Traditional Motion for Summary Judgment. *See Henkel*, 441 S.W.3d at 251.

Since we have determined the above-described evidence established Sturman's right to judgment as a matter of law, we need not address Plaza's argument that the deemed admissions Sturman also relied on were merit-preclusive and should have been withdrawn. *See* Tex. R. App. P. 47.1 (requiring the appellate court to hand down an opinion as short as practicable addressing every issue raised and necessary to the appeal's final disposition). Viewing the evidence in the light most favorable to the nonmovant, we conclude that Sturman met her burden of showing no genuine issues of material fact remain with respect to causation, and she is entitled to judgment as a matter of law. *See Lujan*, 555 S.W.3d at 84; *see also* Tex. R. Civ. P. 166a(b), (c). We reject Plaza's arguments and overrule its sole issue.

### III. Conclusion

Having overruled Plaza's sole issue, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on August 9, 2022
Opinion Delivered December 1, 2022
Before Golemon, C.J., Horton and Johnson, JJ.

12